UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| ALTAGRACIA DELROSARIO UBIERA, | * | CIVIL DOCKET NUMBER: |
|---|---|---|
| | * | 23-45 |
| Plaintiff | * | |
| | * | |
| VERSUS | * | SECT: |
| | * | |
| WYDETTE WILLIAMS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS SHERIFF OF EAST CARROLL PARISH; WARDEN JOHNNY HEDGEMON; DESHAUN FROST; JERRY CARTER; FREDDIE CARTER; MARSHALL BERRY; MICHAEL CRYE; ROMELL EMERSON; TYWANNA CRAIG; ROBERT SCOTT; ROBERT BAILEY; AMBREONICA CLARK; DONALD RAY GILBERT; TAMMY POWELL; ROBERT WRIGHT; TERENCE DISMUKE; MILTON ANDREWS; CHRISTOPHER WILLIS; DARRIN STANDBERRY; AND LENA MIDDLEBROOKS, | * | JUDGE: |
| | * | |
| | * | MAG: |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

**ALTAGRACIA DELROSARIO UBIERA**, individually and on behalf of her deceased son Edward Delrosario, files this Complaint based on the Defendants' deliberate indifference to Edward's serious medical needs, namely, suicidal ideation and behavior, which deliberate indifference resulted in his death. The Defendants' deliberate indifference violated Edward's right to due process and to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the U.S. Constitution.

1

The Plaintiff further submits that Edward had a disability as defined in the Americans with Disabilities Act and the Rehabilitation Act—specifically, depression and suicidal ideation and behavior—and that the Defendants failed to accommodate that disability, thereby discriminating against him in such a manner that he ultimately died.

In support of these claims, the Plaintiff shows as follows:

## I. JURISDICTION

1. This action is brought pursuant to 42 U.S.C. § 1983, the Eighth and Fourteenth Amendments to the United States Constitution, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 et seq. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343, and the aforementioned statutory and constitutional provisions. Jurisdiction is also founded on 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000. Plaintiff also invokes supplemental jurisdiction over claims under state law pursuant to 28 U.S.C. §1367.

## II. PARTIES

**(Plaintiff)**

2. **ALTAGRACIA DELROSARIO UBIERA** is an adult citizen of the State of Texas and is currently domiciled in Houston. She is the natural mother of Edward Delrosario, who died unmarried and without children.

**(Defendants)**

Named defendants herein are:

3. **SHERIFF WYDETTE WILLIAMS,** a person of full age of majority and a resident of East Carroll Parish, State of Louisiana, in his individual and official capacity as the Sheriff of

East Carroll Parish. At all times described herein, **WILLIAMS** was the ultimate policy-maker for the East Carroll Parish Sheriff's Office ("ECPSO"), and was responsible for the hiring, training, supervision, discipline and control of ECPSO employees. At all times described herein, the ECPSO operated the Riverbend Detention Center, which housed inmates on behalf of the State of Louisiana Department of Corrections. Defendant **WILLIAMS** was responsible for appropriate staff to maintain the care, custody, and control of prisoners in custody at the Riverbend Detention Center. He was responsible for all staffing levels of Riverbend Detention Center, including contracting with medical providers. He was also responsible for the supervision, administration, policies, practices, customs, and operations of Riverbend Detention Center. He was also responsible for ensuring appropriate access to services and accommodations for all individuals with disabilities as defined by the ADA who were incarcerated at Riverbend Detention Center. **WILLIAMS** was and is a final policy maker, and at all pertinent times was acting under color of law. He is liable both directly and vicariously for the actions complained of herein.

4. **WARDEN JOHNNY HEDGEMON,** a person of the full age of majority and a resident of the State of Louisiana, in his capacity as Warden of Riverbend Detention Center. At all times described herein, **HEDGEMON** was the Warden of the Riverbend Detention Center, and as such was responsible for the supervision, administration, policies, practices, customs, operations, training, and staffing of Riverbend Detention Center. He was also responsible for ensuring appropriate access to services and accommodations for all individuals with disabilities as defined by the ADA held at Riverbend Detention Center. **HEDGEMON** was and is a final policy maker, and at all pertinent times was acting under color of law. **HEDGEMON** is liable both directly and vicariously for the actions complained of herein.

5. **CAPT. DESHAUN FROST, LT. JERRY CARTER, LT. FREDDIE CARTER,** and **LT. MARSHALL BERRY**, in their individual capacities as employees of ECPSO and supervisors of deputies. **DESHAUN FROST, JERRY CARTER, FREDDIE CARTER,** and **MARSHALL BERRY** are adult citizens of the State of Louisiana and domiciled in the Western District of Louisiana. At all pertinent times, **DESHAUN FROST, JERRY CARTER, FREDDIE CARTER,** and **MARSHALL BERRY** were employed by ECPSO and assigned as supervisors to posts at the Riverbend Detention Center in locations where Edward Delrosario was housed and where he died. They were responsible for ensuring appropriate care, custody, and control occurred, including respecting all prisoners' rights, including those of Edward Delrosario, and for communicating serious medical conditions, including mental health concerns and risks of suicide, of prisoners to appropriate medical staff and/or mental health professionals. They were also responsible for supervising deputies on their shifts to ensure that deputies under their supervision carried out all duties in accordance with their obligations to respect all prisoners' rights. **DESHAUN FROST, JERRY CARTER, FREDDIE CARTER,** and **MARSHALL BERRY** are liable both directly and vicariously for the actions complained of herein.

6. **MICHAEL CRYE, ROMELL EMERSON, TYWANNA CRAIG, ROBERT SCOTT, ROBERT BAILEY, AMBREONICA CLARK, DONALD RAY GILBERT, TAMMY POWELL, ROBERT WRIGHT, TERENCE DISMUKE, MILTON ANDREWS, LARRY WILSON, CHRISTOPHER WILLIS,** and **DARRIN STANDBERRY**, in their individual capacities as employees of ECPSO and Defendant **SHERIFFF WILLIAMS**. These Defendants are all adult citizens of the State of Louisiana and domiciled in the Western District of Louisiana. At all pertinent times, the Defendants named in this Paragraph were employed by

the ECPSO and assigned to posts at the Riverbend Detention Center in locations where Edward Delrosario was housed and where he died. They were responsible for ensuring that appropriate care, custody, and control occurred, including respecting Edward Delrosario's rights, and for communicating serious medical conditions, including mental health concerns and risks of suicide, of prisoners to appropriate medical staff and/or mental health professionals.

7. **NURSE LENA MIDDLEBROOKS**, is a person of the full age of majority residing in the Western District of Louisiana, and employed as a health professional by Defendant **SHERIFF WILLIAMS** and the ECPSO at Riverbend Detention Center. She was responsible for the treatment and care of prisoners, including Edward Delrosario.

### III.   FACTUAL ALLEGATIONS

8. In or about August 2018, Edward Delrosario, a prisoner of the Louisiana Department of Corrections, was transferred to the Riverbend Detention Center. Mr. Delrosario was serving a fifteen-year sentence at the time. His full-term release date was July 14, 2027, but he could have been released as early as January 2024 with good behavior.

9. On November 3, 2020, Mr. Delrosario sent a request form to **WARDEN HEDGEMON**, advising that he needed to be placed on protective custody in E dorm because someone had "put a hit" on him and he couldn't live on any dorms because of it. **WARDEN HEDGEMON** responded that he would look into Mr. Delrosario's situation, but it is unknow what if anything was done.

10. On January 21, 2022, Mr. Delrosario was observed on video surveillance in the "main hall" of the Riverbend Detention Center. When asked why he left out of his dorm, Mr. Delrosario replied, "I can't live in there." Mr. Delrosario was placed in segregation cell number 28 at that time.

11.     On information and belief, at all relevant times segregation cell number 28 was monitored by surveillance video that views both inside and outside the cell.  On further information and belief, the live video feed from segregation cell 28 is displayed in the Riverbend Detention Center main control room and in other locations at the prison.

12.     On January 24, 2022, Defendant **ANDREWS** was notified by main control to respond to segregation cell number 28.  There, he found Mr. Delrosario hanging from the bars of his cell via a bedsheet. Defendants **ANDREWS** and **WILSON** were able to untie the bedsheet and lower Mr. Delrosario to the ground before he completed the suicide.

13.     Defendants **LT. FREDDIE CARTER** and **STANDBERRY** arrived on the scene shortly afterwards.  On information and belief, **LT. FREDDIE CARTER** and/or another Defendant decided to place Mr. Delrosario in a suicide smock after his suicide attempt.  A suicide smock is a garment used in institutions, including jails and prisons, to prevent people from committing suicide.  The tough material of the smock cannot be used to make ligatures.  However, for the suicide smock to be effective, a prisoner's other clothes and any additional materials that could be used to make a ligature must be removed from the prisoner's environment.  It is obvious that a suicide smock cannot simply be placed over a prisoner's other clothes to prevent suicide.  In such a situation, the smock is nothing more than a jacket, and it is obvious a prisoner could use some other article of clothing to make a ligature.

14.     When Defendant **LT. FREDDIE CARTER** went to the medical department to retrieve the suicide smock, he encountered Defendant licensed practical nurse **LENA MIDDLEBROOKS**.  **MIDDLEBROOKS** asked **LT. FREDDIE CARTER** why he was retrieving the suicide smock, and he told her about Mr. Delrosario's attempt to commit suicide.  **MIDDLEBROOKS** asked to see Mr. Delrosario.

15. Mr. Delrosario was brought to the medical department. There, **MIDDLEBROOKS** asked him why he had tried to kill himself. Mr. Delrosario allegedly told her he "had a lot going on." **MIDDLEBROOKS** claims to have told him "killing himself was not the way." Mr. Delrosario was then placed on suicide watch.

16. As a licensed practical nurse, **MIDDLEBROOKS** was wholly unqualified to make any sort of diagnosis or treatment decision regarding Mr. Delrosario after his suicide attempt. She should have immediately referred Mr. Delrosario to someone with the professional competence to address his obvious and serious mental health needs. Instead, she failed to refer him to qualified medical personnel or to seek any treatment for his depression and suicidal ideation. This inaction is consistent with a pattern and practice of failing to treat the serious mental health needs of inmates at Riverbend Detention Center.

17. Furthermore, by failing to refer Mr. Delrosario to an appropriate mental health provider, **MIDDLEBROOKS** was acting outside the scope of her licensure. As a Licensed Practical Nurse (LPN), she did not have the authority to make any form of diagnosis or treatment decision regarding Mr. Delrosario's obvious mental health crisis.

18. On information and belief, one or more of the Defendants **LT. FREDDIE CARTER**, **ANDREWS**, **WILSON**, and **STANDBERRY** placed Mr. Delrosario back into his cell in the suicide smock. However, one or more of these Defendants failed to remove Mr. Delrosario's jail issued pants and shirt. Instead, the suicide smock was placed over Mr. Delrosario's clothes. Therefore, Mr. Delrosario was returned to a segregation cell with items that were obviously suitable for use as another ligature that could be tied around the very same bars Mr. Delrosario had just used in his first suicide attempt.

19. On information and belief, over the course of the next several days, all of the Defendants **WARDEN JOHNNY HEDGEMON**, **CAPT. DESHAUN FROST, LT. JERRY CARTER, LT. FREDDIE CARTER, LT. MARSHALL BERRY, MICHAEL CRYE, ROMELL EMERSON, TYWANNA CRAIG, ROBERT SCOTT, ROBERT BAILEY, AMBREONICA CLARK, DONALD RAY GILBERT, TAMMY POWELL, ROBERT WRIGHT, TERENCE DISMUKE, MILTON ANDREWS, LARRY WILSON, CHRISTOPHER WILLIS, DARRIN STANDBERRY,** and **LENA MIDDLEBROOKS** became aware that Mr. Delrosario had tried to hang himself from the bars in segregation cell 28. Each of these Defendants further became aware that Mr. Delrosario was wearing clothes under the suicide smock, which clothes were obviously suitable for use as another ligature. However, despite their subjective awareness of the obvious risk of harm this situation presented to Mr. Delrosario, none of these Defendants took the simple action of removing Mr. Delrosario's clothes from his cell or directing other Defendants to do so.

20. On further information and belief, **SHERIFF WILLIAMS** and/or **WARDEN HEDGEMON** became aware of Mr. Delrosario's suicide attempt shortly after it happened. However, neither these Defendants nor any other Defendant who became aware of Mr. Delrosario's suicide attempt ordered that he be seen by qualified medical personnel who could address Mr. Delrosario's serious medical needs, ie. his suicidal ideation and impulses. On information and belief, it is the policy and practice at Riverbend Detention Center to fail to provide inmates with serious mental health needs—such as demonstrated suicidality—any form of mental health treatment. Instead, inmates with serious mental health needs are simply left untreated. All Defendants were aware of, condoned, and participated in this pattern and practice of deliberate indifference to the serious medical needs of inmates.

21.     Mr. Delrosario remained on suicide watch for the next several days.  Although suicide watch logs were completed by Defendants **ANDREWS**, **CRYE**, **WILLIS**, **BERRY**, and **LT. JERRY CARTER**, it is unknown whether actual checks were made on Mr. Delrosario.  Plaintiff's counsel have requested surveillance video regarding Mr. Delrosario's death, and they were advised such video existed and would be produced.  However, Defendant **SHERIFF WILLIAMS** has failed to produce any videos or evidence that would corroborate that the suicide watch logs are accurate.

22.     According to some of the suicide logs, Mr. Delrosario was observed talking to himself for extended periods during the next several days.  Mr. Delrosario's behavior demonstrated his continuing need for mental health treatment, as he was clearly undergoing a mental health crisis.  However, none of the individually named Defendants took any action to provide Mr. Delrosario with access to treatment for his serious mental health needs.

23.     According to reports, sometime during the early morning hours of February 2, 2021, Mr. Delrosario used one of the legs from his jail-issued pants to hang himself from the bars of his cell.  He hung there until he died.

24.     On information and belief, Defendants **EMERSON** and/or **CRYE** were assigned to monitor and perform suicide checks on Mr. Delrosario during the time in which he hanged himself.  These Defendants failed to appropriately monitor Mr. Delrosario and/or abandoned their responsibilities, which provided Mr. Delrosario the opportunity to commit the suicide.  These failures were the result of these Defendants' deliberate indifference to the risk of serious bodily harm to Mr. Delrosario.

25. On information and belief, one or more of the other individually named Defendants was assigned to monitor the surveillance video feed coming from Mr. Delrosario's cell. These Defendants failed to appropriately monitor the video feed and/or abandoned their responsibilities, which provided Mr. Delrosario the opportunity to commit the suicide. In the alternative, one or more of these Defendants observed the orange pants leg tied around the bars of Mr. Delrosario's cell but failed to take any action in response to what was obviously another attempt to commit suicide by Mr. Delrosario. These failures were the result of these Defendants' deliberate indifference to the risk of serious bodily harm to Mr. Delrosario.

26. On information and belief, Defendant **LT. JERRY CARTER** was the supervisor on duty during the shift in which Mr. Delrosario hung himself. Defendant **LT. JERRY CARTER** failed to supervise his subordinates and permitted them to be derelict in their duties, as described above, which failure to supervise resulted in the death of Mr. Delrosario. Additionally, **LT. JERRY CARTER** personally shirked and failed in his duties to monitor Mr. Delrosario and provide a reasonably safe environment for him. These failures were the result of **LT. JERRY CARTER**'s deliberate indifference to the risk of serious bodily harm to Mr. Delrosario.

27. At all times relevant to this Complaint, Defendants acted under color of state law.

28. At all times mentioned herein, all the Defendants named in their individual capacities were employed by Defendant **SHERIFF WILLIAMS** and were acting in the course and scope of their employment with Defendant **SHERIFF WILLIAMS**.

29. The Defendants are liable jointly, severally, and in solido for the Plaintiff's injuries.

30. The Defendants are liable to the Plaintiff for compensatory and punitive damages.

31. The Defendants' actions were reckless, willful, wanton, and malicious, and constituted deliberate indifference to the rights of Edward Delrosario and the Plaintiff. The Defendants'

actions were the proximate cause of the injuries and death of Edward Delrosario and the damages to the Plaintiff.

## IV. CAUSES OF ACTION

### COUNT 1:

### § 1983 VIOLATION BASED ON ESTABLISHMENT OF A SYSTEM IN WHICH INMATES WITH SERIOUS MENTAL HEALTH ISSUES ARE DENIED ACCESS TO APPROPRIATE MEDICAL CARE:

### SHERIFF WILLIAMS

32. Defendant **SHERIFF WILLIAMS**, individually and in his official capacity as Sheriff of East Carroll Parish, acted under color of law to violate Edward Delrosario's right to be free from cruel and unusual punishment and the right to due process and equal protection of the laws as protected by the Eighth and Fourteenth Amendments of the United States Constitution and 42 USC § 1983. He did so through a policy and practice of failing to provide inmates in the custody of the Riverbend Detention Center with access to treatment for their serious mental health needs including depression, delusions, and suicidal thoughts and actions.

33. Edward Delrosario and the Plaintiff were individually harmed by Defendant **SHERIFF WILLIAMS**'s failure to provide mental health services to inmates at Riverbend Detention Center because this failure resulted in the death of Edward Delrosario, who was deprived of appropriate mental health and medical treatment after his first suicide attempt, as described above.

34. Defendant **SHERIFF WILLIAMS** knew or should have known of the policy and practice of failing to provide constitutionally adequate mental health treatment to inmates at the Riverbend Detention Center. He also knew or should have known that such policy and practice would lead to an unreasonable risk of serious harm befalling the inmates in his care. Despite this knowledge, **SHERIFF WILLIAMS** failed to take action to address the risk of harm.

35. At all pertinent times, Defendant **SHERIFF WILLIAMS** acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of Edward Delrosario and the Plaintiff by failing to provide appropriate medical and mental health services at Riverbend Detention Center.

36. Defendant **SHERIFF WILLIAMS** is therefore liable to the Plaintiff both individually and, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in his official capacity as Sheriff of East Carroll Parish.

## COUNT 2:

### § 1983 VIOLATION BASED ON FAILURE TO TRAIN AND SUPERVISE OTHER DEFENDANTS TO ENSURE SUICIDAL INMATES RECEIVED APPROPRIATE CARE AND MONITORING:

### SHERIFF WILLIAMS, WARDEN JOHNNY HEDGEMON, CAPT. DESHAUN FROST, LT. JERRY CARTER, LT. FREDDIE CARTER, and LT. MARSHALL BERRY

37. Defendants **SHERIFF WILLIAMS**, individually and in his official capacity, and **WARDEN JOHNNY HEDGEMON, CAPT. DESHAUN FROST, LT. JERRY CARTER, LT. FREDDIE CARTER,** and **LT. MARSHALL BERRY**, in their individual capacities, failed to train and supervise their subordinates to ensure that these subordinates would properly monitor inmates' who were actively suicidal and in a mental health crisis. These Defendants also failed to train and supervise their subordinates on the proper use of a suicide smock to prevent inmate suicides and on other suicide prevention techniques.

38. Edward Delrosario and the Plaintiff were directly harmed by this failure to train and supervise because it caused the death of the Plaintiff's son, Edward Delrosario, who was neither treated nor monitored in a constitutionally adequate fashion after he first attempted suicide.

39. At all pertinent times herein, Defendants **SHERIFF WILLIAMS, WARDEN JOHNNY HEDGEMON, CAPT. DESHAUN FROST, LT. JERRY CARTER, LT. FREDDIE**

**CARTER,** and **LT. MARSHALL BERRY** were aware of the need to train and supervise their subordinates to ensure that they did not violate inmates' rights. These Defendants ignored that need and acted unreasonably and with deliberate indifference and disregard for the safety of Plaintiff's son, Edward Delrosario, as described above.

40. Defendant **SHERIFF WILLIAMS** is liable to the Plaintiff for these failures to train and supervise both individually and, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in his official capacity as Sheriff of East Carroll Parish. The other Defendants named in this Count are liable to the Plaintiff in their individual capacities.

### COUNT 3:

### § 1983 VIOLATION BASED ON DELIBERATE INDIFFERENCE TO EDWARD DELROSARIO'S CONSTITUTIONAL RIGHT TO APPROPRIATE MENTAL HEALTH CARE AND A REASONABLY SAFE ENVIRONMENT:

**WARDEN JOHNNY HEDGEMON, CAPT. DESHAUN FROST, LT. JERRY CARTER, LT. FREDDIE CARTER, LT. MARSHALL BERRY, MICHAEL CRYE, ROMELL EMERSON, TYWANNA CRAIG, ROBERT SCOTT, ROBERT BAILEY, AMBREONICA CLARK, DONALD RAY GILBERT, TAMMY POWELL, ROBERT WRIGHT, TERENCE DISMUKE, MILTON ANDREWS, LARRY WILSON, CHRISTOPHER WILLIS, DARRIN STANDBERRY, and LENA MIDDLEBROOKS**

41. The above-named defendants, acting individually and together, and under color of law, engaged in a course of conduct and conspired to engage in a course of conduct that acted to deprive Edward Delrosario of his constitutional rights and did deprive him of said rights, specifically, the right to be free from cruel and unusual punishment and the right to due process and equal protection of the laws as protected by the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. At all times pertinent herein, these Defendants acted unreasonably, recklessly, maliciously, and/or with deliberate indifference and disregard for the constitutional and civil rights and life and serious medical needs of the deceased, Edward Delrosario, by failing to provide mental health treatment and a reasonably safe environment to

13

protect him from the risk of suicide, and otherwise deliberately disregarding the risk of suicide. Furthermore, these Defendants, individually and collectively, had the duty and ability to intervene to prevent the violations of the rights of Edward Delrosario, as described herein, but failed to do so.

## COUNT 4:

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT BY ESTABLISHING A SYSTEM THAT DISCRIMINATED AGAINST AND FAILED TO ACCOMMODATE A DISABILITY:

### SHERIFF WILLIAMS

42. Edward Delrosario was a person with a disability under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (ADA). He suffered from mental illness, namely, suicidal ideation, depression, and/or delusions.

43. The Riverbend Detention Center, which is run by Defendant **SHERIFF WILLIAMS** and the ECPSO, is a public entity that must comply with Section 504 and the Americans with Disabilities Act. On information and belief, the ECPSO receives federal funds and must comply with these laws.

44. Section 504 of the Rehabilitation Act requires recipients of federal funds to reasonably accommodate persons with disabilities in their facilities, program activities, and services. Section 504 further requires such recipients to modify such facilities, services, and programs as necessary to accomplish this purpose.

45. The ADA defines discrimination as the failure to take necessary steps to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of services for the disabled. Such

services include, inter alia, provisions necessary to achieve effective mental health care and to protect a person from the risk of death when that person is actively suicidal.

46. Plaintiff is entitled to relief against Defendant **SHERIFF WILLIAMS** because the ECPSO and the individual Defendants named herein, acting in the course and scope of their employment with Defendant **SHERIFF WILLIAMS**, had notice of Edward Delrosario's disability but failed to treat it or to make reasonable accommodations for it. **SHERIFF WILLIAMS**, in his official capacity, was aware that ECPSO would fail to make reasonable accommodations for Edward Delrosario's disability, as described in this Complaint. Specifically, inmates at Riverbend Detention Center did not receive treatment for their serious mental health needs, including suicidal ideation and suicidal impulses, and deputies failed to maintain appropriate suicide prevention techniques. Furthermore, despite their ability to do so, Defendants failed to accommodate Edward Delrosario's disability by providing him treatment, appropriately monitoring him, and providing him a reasonably safe environment.

47. The failure to accommodate Edward Delrosario's disability was intentional and/or deliberately indifferent to his rights under Section 504 and Title II of the ADA and was a proximate cause of his death.

## COUNT 5:

### MEDICAL MALPRACTICE:

### **LENA MIDDLEBROOKS**

48. The above-described actions and inactions of Defendant **LENA MIDDLEBROOKS**, who was a healthcare professional charged with the care of Edward Delrosario, fell below the applicable standard of care for such a professional and resulted in Edward Delrosario's death.

Defendant **LENA MIDDLEBROOKS** is therefore liable to the Plaintiff under Louisiana state law for her medical malpractice.

## COUNT 6:

### NEGLIGENT AND/OR INTENTIONAL CONDUCT RESULTING IN INJURY AND DEATH:

### LENA MIDDLEBROOKS, CAPT. DESHAUN FROST, LT. JERRY CARTER, LT. FREDDIE CARTER, LT. MARSHALL BERRY, MICHAEL CRYE, ROMELL EMERSON, TYWANNA CRAIG, ROBERT SCOTT, ROBERT BAILEY, AMBREONICA CLARK, DONALD RAY GILBERT, TAMMY POWELL, ROBERT WRIGHT, TERENCE DISMUKE, MILTON ANDREWS, LARRY WILSON, CHRISTOPHER WILLIS, and DARRIN STANDBERRY

49. The Defendants named in this Count, acting individually and together, engaged in a course of conduct and conspired to engage in a course of conduct that caused injury and harm to Edward Delrosario and ultimately led to his death. At all times pertinent herein, these Defendants, individually and collectively, acted intentionally, maliciously, recklessly, and/or negligently towards the deceased, Edward Delrosario. Furthermore, these Defendants, individually and collectively, had the duty and ability to intervene to prevent the tortious conduct of others, as described herein, but failed to do so. They are therefore liable to the Plaintiff under Louisiana state law.

## COUNT 7:

### RESPONDEAT SUPERIOR:

### SHERIFF WILLIAMS

50. At all relevant times, the individually named Defendants were acting in the course and scope of their employment with Defendant **SHERIFF WILLIAMS**. Defendant **SHERIFF WILLIAMS** is therefore liable under the doctrine of respondeat superior for the actions and inactions of the individual Defendants, as described herein.

## V.     DAMAGES

51.   As a result of the actions and inactions of the Defendants as described above, damages have been incurred as follows:

   a.   Edward Delrosario (deceased) suffered conscious and severe physical, mental, and emotional distress, pain and suffering prior to his death, and lost his life.

   b.   **ALTAGRACIA DELROSARIO UBIERA**, the mother of Edward Delrosario, suffered emotional pain and suffering, past, present, and future; loss of support; suffered the loss of love, affection, and companionship of her son, Edward Delrosario; and incurred funeral and other expenses associated with his death.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that after due proceedings are had that there be judgment rendered herein in Plaintiff's favor and against all Defendants individually and jointly, as follows:

   a.   Compensatory and punitive damages;

   b.   Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. 794(b);

   c.   all costs of these proceedings and legal interest; and

   d.   All other relief as appears just and proper to this Honorable Court

Respectfully submitted,

/s/ Stephen Haedicke
**STEPHEN J. HAEDICKE** (Bar Roll No. 30537)
1040 St. Ferdinand St.
New Orleans, LA 70117
(504)291-6990 Telephone
(504)291-6998 Fax
stephen@haedickelaw.com


/s/ Gary W. Bizal
**GARY W. BIZAL** (#1255)
4907 Magazine St.
New Orleans, LA 70115
P: 504.525-1328
F: 504.525-1353

*Attorneys for Plaintiff*